SOMMERVILLE, J.
This was originally a petitory action which, by agreement entered into in open court, was converted into a suit to establish the boundary line between the contiguous estates of plaintiff and defendants. Two surveys were made during the course of the trial, by order of the court, and the court made the second survey the basis of its judgment in favor of plaintiff, and against defendants. The latter have appealed.
Plaintiff, in his petition, describes the property as:
“First. A tract of land bounded north by land of William Stutes or assigns, east by property of Anna Bernard, widow of Alexandre J. Meaux, deceased, south by lands of Jules Guidry et al., and west by lands of William Thomas, or assigns, and being the western portion of the Francois Stelly concession, section 39, township 11 south, range 1 west, La. Mer., containing 240 acres, more or less.
“Second. tract of seven and one-half arpents front on Bayou Queue de Tortue, by a depth of forty arpents, making three hundred superficial arpents, bounded east by lands of Don Louis Jean Francois Brous *216 sard, or assigns, west by lands formerly owned by Jules Guidry, being situated in the said Francois Stelly concession, in section thirty-nine (39), township eleven (11) south, range one (1) west, La. Mer.; both of said'tracts of land having a frontage of fifteen arpents by a depth of forty arpents.”
The land in controversy is composed of about 100 acres between the estates of plaintiff and defendants; the former alleges his estate to be in section 39, while the property here claimed by him is in section 24, the land being south of defendants’ estate, and located in the parish of Acadia.
[1,2] The Francois Stelly concession, referred to by plaintiff, and of which he alleges his lands to form parts, is in the form of a “requette,” issued by the Spanish government when' Louisiana was under the control of Spain. It does not pretend to locate the land petitioned for by Francois Stelly; but it authorizes the land to be surveyed, so that a patent containing a proper description may be issued to the petitioner and patentee. It reads in part as follows:
“The fiscal of the royal treasury, Hacinda, on the communication made to him of the petition of Francois Stelly, inhabitant of Opelousas, soliciting thirty arpents front, by the ordinary depth, of land vacant and uncultivated on the bayou known by the name of Queue de Tortue, to form a vacherie, is of the opinion that you may, if it meets your approbation, grant him the title of property after the survey shall have been made, and a. plat returned by the surveyor general; but the tribunal may act as they think most conducive to justice is what the fiscal decrees. New Orleans, 18 May, 1802. Gilbert Leonard.”
“Decreed. Morales.”
“Ordered by Don Juan Ventura Morales, contador principal of the army, acting intendancy of the royal hacinda of the province of Louisiana and West Florida, who signs with the advice of the assessor general of the intendancy. New Orleans, 19 May, 1802.”
“Carlos Himines, New Orleans, 2 June, 1802.”
“Let the iDetitioner prove what quantity of land and the number of animals he has, that a decree be made of it.”
“Morales.”
“And countersigned:
“Siede Serreno.”
“Before me, Charles Himines. * * * ”
“The commissioners are of the opinion that this claim would have been valid under the usages of the Spanish government, and report if as one which, in their opinion, ought to be confirmed.”
From 3 American State Papers, pp. 85 and 104.
It becomes necessary to establish the-northern boundary of the Stelly concession, for plaintiff alleges that his property is embraced within that concession. Defendants’ property does not form part of that concession.
If the property claimed by plaintiff in this-suit is within the Stelly concession, it belongs to him; otherwise, it does not.
The record does not contain a plat or survey made by the government of the United-States for Francois Stelly. But the heirs of F. Stelly, in 1830, appear to have had the claim of their ancestor surveyed by Jackson, deputy surveyor.
This plat indicates that the 30 arpents claimed by them as fronting on Bayou Queue de Tortue extended to the north -and to the south from that bayou, embracing the bayou as a part of the claim.
[3] It is contended by plaintiff that the bayou was a navigable stream at the time, that the land was surveyed; that it did not pass with the grant; that it was some twenty-nine to thirty-eight chains, or over one third of a mile, in width; and that the southern boundary of his land was the northern bank of the bayou.
If plaintiff had succeeded in establishing the southern boundary as just indicated, he would perhaps be entitled to the 100 acres claimed by him in this suit, although his title calls for land in section 39, and the 100 acres claimed by him are in section 24.
The burden was on plaintiff to prove that Bayou Queue de Tortue was a navigable stream at the time that the concession was made to Francois Stelly, his author in title, and he has failed to sustain this burden. Board v. Glassel, 120 La. 400, 45 South. 370; Healy v. Joliet, 116 U. S. 191, 6 Sup. Ct. 352, *218 29 L. Ed. 607; Burns v. Crescent Club, 116 La. 1038, 41 South. 249; 16 Cyc. 245.
[4] The earliest survey which is in the record is one made by Aborn, deputy surveyor, in 1807, which clearly shows that the lines were run across the bayou, north and south, and did not stop at the edges thereof. The next survey, made by Jackson in 1830 for the heirs of Stelly, in which they acquiesced, shows the same condition, and, further, that the stream was very narrow, bordered with marsh lands grown with timber. Another survey was made by Parsons and Gassons, surveyors, in 1876, when the property belonged to the estate of Eloi Guidry, one of the ancestors of plaintiff in title; and it shows the same conditions as did the first survey in 1807.
These two last surveys show the Stelly grant, of which plaintiff owns only a portion, to be within sections 37 and. 39, containing some 2,000 acres; while the land in dispute is in section 24.
The record contains other surveys and plats of ground, belonging to Winfree and Coleman, contiguous to the Stelly grant, •which embrace Bayou Queue de Tortue, showing it to be a nonnavigable stream, grown with trees, in the years 1810 and 1817; and the surveyors’ lines are run through and across the bayou, as they were run by the surveyors of the Stelly grant. Parsons and Gasson, surveyors, in 1876, in their field notes, mention “117.00 chains to swamp and haw thicket,” and again, “97 chains to swamp 126 chains leave swamp to prairie,” showing clearly the existence of a swamp, and not a navigable stream.
Plaintiff contends that this wide swamp is Bayou Queue de Tortue, a navigable stream, and that it should be excluded from the area of the Stelly grant, and that the southern boundary of his land is the northern bank of the bayou. He says on his brief:
“Common sense would suggest that the government did not intend to convey the navigable stream to a person. This stream, Bayou Queue de Tortue, is reserved to the public, and no rights of ownership were under the Spanish laws conveyed to its grantees.”
The maps, sketches, and field notes in evidence not' only suggest but show that the bayou was and is very narrow, that it is non-navigable, and that it runs through a thickly wooded swamp; and under the Spanish laws, and the laws of this government, title might be and was conveyed to the bayou in the “requette” made to Francois Stelly, and the surveys made thereunder which embraced the bayou and the lands on both sides of it. Board v. Glassel, 120 La. 400, 45 South. 370.
The south line of plaintiff’s property has always been and is the northern edge of the bayou, which divides the original Stelly grant into two parts; the northern part belongs to plaintiff, and extends 40 arpents, to the boundary line between sections 24 and 39.
Mr. Louis Fontenot, sheriff of the parish of Acadia, at one time owner of the property now owned by plaintiff, testifies that he had the land surveyed, and that its northern boundary was the roadway which now divides the property of plaintiff from that of the defendants, and that it was all in section 39, and that he and the former owners of the land—
“always considered that the swamp was a part of the Stelly grant.”
He says:
“I understood it that way. The grant extended clear through the timber; but I did not know how far. I always considered that I owned one-lialf of that tract; that I had the northern portion, and Mr. .Kaplan had the southern portion, ® * * in the swamp and to the extreme south. I do not know how far it ran back from; but it ran back forty arpents, if I am not mistaken.”
He was asked:
“What do you mean by these swamps — isn’t that Bayou Queue de Tortue? A. .Tes, sir; it *220 is supposed to be tbe bayou, but there is really no bayou there. It is just little lakes in places. They say it is a bayou; but I call it a swamp.”
Plaintiff admits:
“That possession of the defendants is protected until a right of the plaintiff to the land is fixed by some title.”
The title of plaintiff calls for a frontage of 15 arpents on Bayou Queue de Tortue by 40 arpents in depth, which clearly fixes the south line along the said bayou, which embraces all that part of the swamp on the northern side of the bayou. When the lines are run from the bayou to a depth of 40 arpents, plaintiff’s property will all be in section 39, as described in his petition and title, and it will not embrace the property which he claims in this suit, and which is in the possession of defendants. Reference is made to the title to fix the boundary between plaintiff and defendants. The court will not decree anything which will affect the ownership of the property.
The boundaries of the Stelly grant were fixed by the survey of Jackson, deputy surveyor, made in 1830 for the heirs of Francois Stelly, and at that time the land was segregated from the public domain. The title was there and then perfected in the heirs of Stelly.
During the course of the trial two surveys were made.by a surveyor appointed by the court for the purpose. In his first survey, the surveyor ran his lines so as to embrace the property lying north of Bayou Queue de Tortue to the northern boundary line of section 39, which excluded the land claimed by plaintiff in this suit, and which land is in section 24. He testified that he had used the field notes of the surveyors hereinbefore referred to, and that he included the broad swamp on the north side of the middle of the Bayou Queue de Tortue as part of the Stelly grant; that there was sufficient warrant for his so doing; that he did not see why it should be omitted; that he found a number of blazed trees in the swamp; and that he concluded that a certain part was the channel of the bayou, although there was very little indication of a channel. He could not say whether he could locate the channel or not, and that in the second survey made by him he excluded the swamp land “by order of the court.” The question was asked of the witness by the court:
“In your opinion as an expert, taking into view the facts of the litigation, being for the purpose of this court to pass upon the boundary lines between the plaintiff and defendants, which is the best map for the court to pass upon? A. I will say that the latter survey was —the last map.”
And the court based its opinion upon the expert’s opinion in the case. This was erroneous; all of the evidence in the case should have been considered, and have been made the basis of the judgment of the court. The first survey made by the witness W. L. White, surveyor, was along lines already established and followed by other surveyors, and it was in accordance with the titles of former owners of the property.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there be judgment in favor of defendants, and against plaintiff, at the cost of plaintiff in both courts, that the survey made by W. L. White, surveyor, the plat of which was filed in this record on the 5th day of July, 1911, and the proces verbal thereof, are approved and homologated, and that the northern boundary line of the Francois Stelly grant, as fixed therein, is declared to be the true boundary between the two pieces of property belonging to the parties to this suit.
O’NIELL and PROVOSTY, JJ., take no part.